UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GIRAFFE G4 SYSTEMS, LLC,                          :
                                                  :
                    Plaintiff,                    :
                                                  :
                                                  :      **OPINION AND ORDER**
v.                                                :
                                                  :      17 CV 5334 (VB)
MEASUREMENT, LTD. and STEVEN P.                   :
PETRUCELLI, Ph.D.,                                :
                                                  :
                    Defendants.                   :
------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Giraffe G4 Systems, LLC ("Giraffe"), brings this action against Measurement,

Ltd. ("Measurement"), and Steven P. Petrucelli, Ph.D, for breach of contract, fraud, and unjust

enrichment.

      Now pending is defendants' motion to dismiss the second amended complaint ("SAC")

pursuant to Rules 12(b)(2) and 12(b)(6).  (Doc. #4).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

      In deciding the pending motion, the Court accepts as true all well-pleaded allegations in

the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

      Giraffe designs and sells programmable distance measuring systems with alarm signals

and LED displays for vehicles.  Measurement designs and manufactures electronic devices.

Petrucelli is Measurement's managing director.

On or about August 1, 2009, Giraffe and Measurement entered into an agreement (the "2009 Agreement")[1] for Measurement to manufacture programmable distance measuring systems ("units") designed by Giraffe. These units were to be used by trucks to measure the distance to overhead obstacles and display results on an LED display.

The 2009 Agreement sets forth that "all intellectual property of any kind whatsoever . . . is owned by Giraffe." (SAC ¶ 11). In addition, the 2009 Agreement states, "Upon the completion of this Agreement . . . Vendor shall return all Subject Information, including copies, derivatives or embodiments of any of such information, to Customer." (SAC Ex. A ¶ 14.4, hereinafter "2009 Agmt.").

Pursuant to the 2009 Agreement, on March 11, 2010, Giraffe received fifty prototypes from Measurement for testing. To facilitate Measurement's fabrication of these prototypes and as authorized by paragraph 16.6 of the 2009 Agreement, Giraffe reimbursed Measurement in installments for tooling, equipment, and software.

Thereafter, Giraffe paid Measurement $49,000 for 2,000 units.[2]

In or about June 2015, Giraffe made changes to the unit design to improve its functionality. Giraffe placed a new order (the "2015 Purchase Order") "with new parameters for the units and a new price per unit." (SAC ¶ 23). Giraffe ordered 1,500 units for $65,000. After placing the order, Giraffe told Measurement not to start production until Giraffe paid half of the total purchase price.

On or about August 28, 2015, Giraffe alleges a Measurement employee, at Petrucelli's direction, told Giraffe that Measurement was "on the verge of going out of business, and that it

---

[1]     The 2009 Agreement appears to have been executed on December 23, 2009.

[2]     The complaint does not provide the date of payment or delivery for the units produced pursuant to the 2009 Agreement.

had already started production on the new order, despite the request that no work be done until payment was made." (SAC ¶ 26). The Measurement employee also said "if [Giraffe] did not pay the first half of the purchase price, it risked losing control over its product, which would be dumped on the market by the Chinese manufacturer engaged by Measurement." (SAC ¶ 27). The employee told Giraffe the new units would be completed by October 30, 2015, and that Giraffe should begin looking for a new manufacturer.

On or about September 30, 2015,[3] Giraffe paid Measurement $32,500.

Measurement did not deliver any units to Giraffe in October 2015.

Sometime in early 2016, Measurement agreed to produce another prototype. In April 2016, after two unsuccessful attempts, Measurement created a functional prototype. In or about August 2016, Measurement delivered fifty non-working units. Measurement was unable to produce and never delivered working units.

Between October 2016 and June 2017, Giraffe hired an independent electrical contractor, Sandy Templeton, to diagnose the issues with the units. Templeton determined it was a software problem. Giraffe told Measurement about the software issue, but Measurement allegedly refused to fix the software. Giraffe hired Templeton's company to redesign the unit.

Measurement did not provide the source code for the software, making it difficult for Giraffe to have a third-party solve the software issue. Giraffe alleges it received an e-mail in error from Measurement's manufacturer in China in which Petrucelli admits he did not want the Chinese manufacturer to provide to Giraffe the information needed to have a different vendor produce the units.

---

[3]     The Court assumes the allegation that payment was made on "September 30, 2016" is a typographical error. (SAC ¶ 29).

Giraffe demanded Measurement return the initial payments and the nonfunctioning units as well as the dies, tooling, prototypes, and software. As of the filing of the second amended complaint, Measurement had not returned any of the requested money or property.

## DISCUSSION

I.    Standard of Review

On a motion to dismiss under Rule 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Prior to discovery, a plaintiff may defeat a motion to dismiss "by pleading in good faith legally sufficient allegations of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (internal citation omitted). A plaintiff can make this showing through "affidavits and supporting material[s] containing an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (alterations in original) (quotations and citations omitted). When there has been no hearing on the merits, "all pleadings and affidavits must be construed in the light most favorable to [plaintiff] and all doubts must be resolved in . . . plaintiff's favor." Landoil Res. Corp. v. Alexander & Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678;
<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded
factual allegations, a court should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard
of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that defendant is liable for the misconduct alleged."
<u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
<u>Id</u>.

In considering a motion to dismiss, "a district court may consider the facts alleged in the
complaint, documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint."  <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir.
2010).  The court may nevertheless consider a document not incorporated by reference if the
complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral'
to the complaint."  <u>Id</u>. (quoting <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006)).
However, "it must be clear on the record that no dispute exists regarding the authenticity or
accuracy of the document."  <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d at 111 (quoting
<u>Faulkner v. Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006)).  "It must also be clear that there exist no
material disputed issues of fact regarding the relevance of the document."  <u>DiFolco v. MSNBC
Cable L.L.C.</u>, 622 F.3d at 111 (quoting <u>Faulkner v. Beer</u>, 463 F.3d at 134).

II.     Breach of Contract

Defendants argue the contract claim for breach of the 2009 Agreement must be dismissed because the 2015 Purchase Order is not an extension of the 2009 Agreement.

The Court agrees.

To state a breach of contract claim under New York law, plaintiff must plead "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

When interpreting a contract, "the intent of the parties governs." Crane Co. v. Coltec Indus., Inc., 171 F.3d 733, 737 (2d Cir. 1999) (internal quotation marks omitted). Intent is ascertained "from the plain meaning of the language employed" in the agreement. Id. (citing Tigue v. Commercial Life Ins. Co., 219 A.D.2d 820, 821 (4th Dep't 1995)). In analyzing intent, "the rules of contract construction require [the Court] to adopt an interpretation which gives meaning to every provision of the contract." Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 111 (2d Cir. 2008). Thus, courts must avoid "interpretations that render contract provisions meaningless or superfluous." Manley v. AmBase Corp., 337 F.3d 237, 250 (2d Cir. 2003).

"Whether a contract is ambiguous is a question of law." Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 53 (2d Cir. 2012). "Contract language is not ambiguous if it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." Id. When the parties' intent is unambiguous, the contract "must be enforced according to the plain meaning of its terms." Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2001) (citation omitted).

Here, the 2009 Agreement expired on July 31, 2010. Specifically, the expiration clause states, "This Agreement shall commence on August 1, 2009 . . . and . . . shall remain in full force

and effect for an initial period of 12 months." (2009 Agmt. ¶ 4.1). The next paragraph provides, "This Agreement may be extended upon written agreement of the parties." (Id. at ¶ 4.2). Such an extension only makes sense, in light of the expiration language, if the extension is agreed to before the contract expires. If the 2009 Agreement can be invoked at any time after expiration, the expiration clause would serve no purpose. Therefore, when Giraffe sought to extend or revive the 2009 Agreement in June 2015, the 2009 Agreement had already expired and could not be extended.

Because the 2015 Purchase Order was not an extension of the 2009 Agreement, any claims arising under the 2009 Agreement are now time-barred.

The statute of limitations for contract claims in New York is six years. C.P.L.R. § 213(2). The statute of limitations runs from the date of the breach. See Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007).

A breach of the 2009 Agreement could not have occurred after its July 31, 2010, expiration. Thus, July 31, 2016, is the latest possible date on which a claim for breach of the 2009 Agreement would have been timely. Plaintiff commenced this action on July 14, 2017. As a result, any breach of the 2009 Agreement is time-barred.

Accordingly, the contract claim on the 2009 Agreement is dismissed.

III.     Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege (i) the defendant was enriched, (ii) at the plaintiff's expense, and (3) it would be "against equity and good conscience" to permit the defendant to retain what is sought to be recovered. Cruz v. McAneny, 31 A.D.3d 54, 59 (2d Dep't 2006); see also Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).

First, defendants argue,[4] inter alia, the unjust enrichment claim is time-barred because it arises out of the 2009 Agreement.[5]

The Court disagrees.

The statute of limitations for an unjust enrichment claim is generally six years. See Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 518 (2d Cir. 2001). The statute of limitations for unjust enrichment begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution." Id. at 520 (quoting Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 192 A.D.2d 501 (2d Dep't 1993)).

Here, Giraffe does not articulate which act gave rise to defendants' duty of restitution. Nevertheless, at the earliest, the unjust enrichment claim runs from 2015, when Measurement refused to return the software. Therefore, the unjust enrichment claim arising from the 2015 Purchase Order is not time-barred.[6]

---

[4]    Defendants address the unjust enrichment claim for the first time in their reply papers. Nevertheless, the Court addresses this argument as if it had been properly raised in the initial motion to dismiss.

[5]    Defendants also argue the Court lacks subject-matter jurisdiction to decide the claim because, if certain causes of action are dismissed or deemed duplicative, the amount in controversy will be less than $75,000. That argument is plainly wrong. For diversity jurisdiction, the amount in controversy is evaluated at the time the operative complaint is filed. Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003). Moreover, affirmative defenses asserted on the merits may not be used to whittle down the amount in controversy. Id. Even absent the damages for unjust enrichment, in the SAC Giraffe alleges damages of $237,449 for its contract claim and $32,400 for its fraud claim. That is adequate to satisfy 28 U.S.C. § 1332.

[6]    Defendants argue "any portion of the unjust enrichment claim that seeks relief for conduct under the terms of the 2009 agreement must be dismissed." (Defs.' Reply 8). To the extent the SAC pleads such a claim, unjust enrichment claims arising before July 14, 2011, are time-barred. The Court does not address what, if any, conduct before that date might fall within the scope of the surviving unjust enrichment claim.

Second, defendants appear to argue the "equity and good conscious" prong is not satisfied.

That argument is unavailing.

An unjust enrichment claim lies when "the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012) (internal quotation marks omitted). Unjust enrichment, however, "is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Id.; see also IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.").

At this early stage in the litigation, plaintiff has pleaded the unusual circumstances necessary to satisfy the "equity and good conscious" prong of an unjust enrichment claim. The 2015 Purchase Order, standing alone, was an offer, not a contract. See State of N.Y. v. SCA Servs., Inc., 1993 WL 355348, *2 (S.D.N.Y. September 8, 1993) (holding a purchase order becomes a contract when the other party accepts the terms by performance, barring manifest intention to the contrary). Because of the subsequent "request" that Measurement not start production until after payment, and Measurement's statement that it "had already started production . . . despite [that] request," (SAC ¶¶ 25–26), the Court cannot determine whether the 2015 Purchase Order became a viable contract. See Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 240–41 (S.D.N.Y. 2007) (denying defendants' motion to dismiss unjust

enrichment claim, subject to renewed motion, where existence of contract was not clear on the face of the complaint).

Accordingly, the unjust enrichment claim may proceed.

IV.    Fraud

Defendants argue, inter alia, Giraffe failed adequately to plead it suffered an injury as a result of the alleged fraud.

The Court agrees.

A claim for fraud under New York law requires a showing of "[i] a misrepresentation or material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury."  Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996).

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstance constituting fraud or mistake." "[T]o comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  Lastly, "[t]o meet the requirement of Rule 9(b) a plaintiff must show the manner in which he was damaged by the implementation of a deceptive or manipulative practice or by a misrepresentation or omission."  Moran v. Kidder Peasbody & Co., 609 F.Supp 661, 665 (S.D.N.Y. 1985).

Here, Giraffe asserts Petrucelli and Measurement, through an allegedly false statement made by an employee, induced Giraffe to pay $32,500 on September 30, 2015.  Giraffe pleaded

it "would not have submitted payment for nonworking units but for this representation." (SAC ¶ 84). Although working units were never delivered, the 2015 Purchase Order contemplated Giraffe would pre-pay half of the purchase price prior to the delivery of any units. Under this arrangement, Giraffe would not know whether the units worked at the time of its initial payment, because it specifically asked for production to begin only after Giraffe paid for half of the order. Therefore, the injury flowing from the allegedly false statement is not the $32,500 pre-payment itself but an un-pleaded injury resulting from a payment made earlier in time than Giraffe intended.

Because Giraffe failed to plead the allegedly fraudulent statement caused an injury, the fraud claim is dismissed.

V.      Defendant Petrucelli

Defendants assert the claims against Petrucelli must be dismissed because the Court lacks personal jurisdiction over him and because plaintiff failed to plead facts to support a claim against Petrucelli in his individual capacity, rather than as an agent of Measurement.

The Court disagrees as to the first argument, but agrees as to the second.

New York does not adhere to a blanket rule that "an individual should not be subject to jurisdiction when his only dealings in the forum State were solely in a corporate capacity." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 270–72 (1988) (holding this "fiduciary shield doctrine" does not defeat jurisdiction under New York's long-arm statute). Rather, "[each] defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984).

To determine whether personal jurisdiction exists over a non-domiciliary defendant the Court engages in a two-step inquiry. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158,

163 (2d Cir. 2010).  First, the Court determines whether the forum state's law permits the exercise of jurisdiction over the defendant.  See id.  "[T]he second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution."  Id. at 164.

New York's long-arm statute provides in relevant part,

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . .  commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

C.P.L.R. § 302(a)(3).

Here, Giraffe has adequately pleaded Petrucelli caused, through an out-of-state agent, an allegedly fraudulent statement to be transmitted to New York.  Petrucelli could reasonably expect the statement to have consequences in the state—indeed the alleged purpose of the allegedly fraudulent statement was to induce payment.  Lastly, Petrucelli as an employee of Measurement, derives substantial revenue from interstate or international commerce.  Here, Measurement and Petrucelli are alleged to have communicated with a manufacturer in China and had previously entered into an interstate contract with Giraffe, satisfying the last element of the New York long-arm statute.

The Court also concludes that its exercise of personal jurisdiction over Petrucelli comports with the Due Process Clause.

"[T]o satisfy the Due Process Clause of the United States Constitution, the exercise of long-arm jurisdiction by New York must be based on defendants' 'minimum contacts' with the state and must comport with 'traditional notions of fair play and substantial justice.'"  Agency

Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 32 (2d Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of jurisdiction a court may exercise over a defendant, differentiated by the kind of minimum contacts the defendant has had with the forum state. "These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction." Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2016).

Specific personal jurisdiction over a defendant exists "in a suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

Here, the suit arises in major part out of the allegedly fraudulent statement that is also the basis for jurisdiction over Petrucelli. Thus, Petrucelli had sufficient minimum contacts with New York.

"Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002) (internal citations and quotation omitted).

Because Petrucelli makes no such showing, the Court has personal jurisdiction over him.

Nevertheless, the claims against Petrucelli fail because he was acting in his capacity as a Measurement employee.

Under New York law, a party seeking to pierce the corporate veil and hold an individual liable for corporate action must make two showings: "1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001) (citation omitted).

In conducting a veil piercing analysis, courts may consider the following factors to determine whether the first requirement, domination over the corporation, is met:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). The veil piercing inquiry is fact intensive, and "disregarding corporate separateness is a remedy that differs with the circumstances of each case." Id. (internal quotation omitted).

Here, although it has now filed a complaint and two amended complaints, Giraffe does not allege a single fact to suggest Petrucelli had complete dominion over Measurement to warrant veil piercing.

Accordingly, the claims against Petrucelli are dismissed.

**CONCLUSION**

The motion to dismiss the breach of contract and fraud claims is GRANTED. The motion to dismiss all claims against Petrucelli is GRANTED. The motion to dismiss the unjust enrichment claim against Measurement is DENIED.

The Clerk is instructed to terminate defendant Steven P. Petrucelli, Ph.D., and terminate the pending motion. (Doc. #4).

Dated: April 13, 2018
      White Plains, NY

                        SO ORDERED:

                        Vincent L. Briccetti
                        United States District Judge